

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RMT:JN/DG
F. #2012R00103

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 7, 2019

By ECF and Hand Delivery

The Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Alexander Garkusha
               Criminal Docket No. 15-381 (RJD)

Dear Judge Dearie:

      The government respectfully submits this letter pursuant to Section 5K1.1 of the United States Sentencing Guidelines ("Guidelines") in connection with the June 17, 2019 sentencing of the defendant Alexander Garkusha ("Garkusha").  As described below, Garkusha's cooperation contributed to the successful prosecutions of co-defendants Vladislav Khalupsky and Vitaly Korchevsky, as well as others, for their roles in a scheme to defraud various newswires by conspiring with others to steal press releases through sophisticated computer intrusion techniques and to trade on those press releases ahead of the market.  The government respectfully recommends that the Court, in its discretion, depart downward from the applicable advisory Guidelines range in sentencing Garkusha.

I.      Background and Offense Conduct[1]

      Between approximately 2011 and 2015, Garkusha's co-conspirators, including Korchevsky, Khalupsky, Arkadiy Dubovoy, Igor Dubovoy and Leonid Momotok, along with others, traded on stolen press releases obtained by hackers from newswire services.  The trades were conducted before the rest of the market had access to the press releases.

      Garkusha became aware of the scheme at the beginning, when he met with Arkadiy Dubovoy and Korchevsky at the Atlanta airport in late 2010.  During that meeting,

---

[1] Because the Court is deeply familiar with the facts of this case from, among other things, presiding over the trial of Korchevsky and Khalupsky, the government provides only a brief summary of the facts below, and respectfully refers to the trial record and the Presentence Investigation Report ("PSR") for further detail.

Hon. Raymond J. Dearie
June 7, 2019
Page 2

Dubovoy presented Korchevsky with press releases and discussed the scheme. Although Garkusha learned of the scheme at the outset, he declined to trade on the stolen press releases until 2015. Beginning in 2015, Garkusha received coded text messages from Igor Dubovoy that contained instructions on how to trade on the stolen information. Between approximately January 2015 and May 2015, Garkusha gained approximately $136,463 from illegal trades and profited approximately $48,523. (Id. ¶ 34.) Of the four defendants charged in this case, Garkusha was involved in the conspiracy for the shortest period of time and made the least amount of money.

Garkusha was arrested in August 2015. On December 21, 2015, Garkusha pled guilty, pursuant to a cooperation agreement, before Magistrate Judge Ramon E. Reyes, Jr. to conspiracy to commit wire fraud (Count One of five count indictment). (Id. ¶ 1.)

II.   Guidelines Calculation

The government agrees with the Guidelines calculation in the PSR and set forth below.

|   |   |   |
|---|---|---:|
| Base Offense Level (§ 2B1.1(a)(1)) | | 7 |
| Plus: | Gain of more than $1.5 million (§ 2B1.1(b)(1)(I)) | +16 |
| Plus: | Scheme involved 10 or more victims (§ 2B1.1(2)(A)(i)) | +2 |
| Plus: | Substantial part of the fraudulent scheme was committed outside the United States (§ 2B1.1(b)(10)(b)) | +2 |
| Less: | Minor role (§ 3B1.2(b)) | -2 |
| Less: | Acceptance of responsibility (§ 3E1.1(a),(b)) | -3 |
| Total: | | 22 |

Based on a total offense level of 22 and a criminal history category of I, the applicable Guidelines' range is 41-51 months' imprisonment. (Id. ¶ 113.)

In his sentencing letter, Garkusha argues that his Guidelines range should be 4-10 months' imprisonment based on a Base Offense Level of 7; a 4-point enhancement that accounts

n/a

Hon. Raymond J. Dearie
June 7, 2019
Page 3

for only the profits in his brokerage account[2]; and a two-point reduction for acceptance of responsibility.  Defendant's Sentencing Letter at 4.

   With regard to the Guidelines' gain calculation, Garkusha is incorrect that only the profits in his own account should be considered because (i) the Guidelines' determination is based on unlawful gain, not net profit, and (ii) for Guidelines' purposes, Garkusha is accountable for the reasonably foreseeable gains of his co-conspirators.  Here, the range set forth in the PSR reflects only the unlawful gains in Garkusha's brokerage account and the Dubovoys' brokerage accounts in 2015, when Garkusha received the stolen information from the Dubovoys and traded on it.  It does not include unlawful gains of other co-conspirators, including Korchevsky, or any of the unlawful gains prior to January 2015, when Garkusha knew that others were trading illegally.  Given Garkusha's knowledge of the scheme, the Dubovoys' unlawful gains in 2015 were reasonably foreseeable to him and should be part of his Guidelines' calculation.[3]  See June 17, 2019 Addendum to PSR.

   Although Garkusha argues that the Guidelines' enhancements for number of victims (§ 2B1.1(2)(A)(i)) and a substantial part of the fraud being committed outside of the United States (U.S.S.G. § 2B1.1(b)(10)(b)) do not apply, he does not address these enhancements in his sentencing letter.  In his objections to the PSR, Garkusha agreed that the enhancement for conduct outside of the United States should apply, but disputed that the number of victims enhancement should apply because of Garkusha's minor involvement in the scheme.  See Defendant's Apr. 18, 2019 Letter to Probation.

   The enhancement for a substantial part of scheme being committed outside of the United States applies because, among other things, the hacks were initiated from abroad and numerous members of the conspiracy committed their offenses from abroad.  With regard to the number of victims, Garkusha's role in the scheme does not impact the number of victims (and Garkusha does not argue that there were fewer than ten victims).  Rather, Garkusha's role in the scheme is reflected in the minor role reduction under U.S.S.G. § 3B1.2(b).

III.  Substantial Assistance

   Garkusha provided substantial assistance to the government.  Shortly after his arrest in August 2015, Garkusha had multiple meetings with the government, during which he

---

[2] Garkusha's profit based on the illegal trading was approximately $48,523.  (PSR ¶ 34.)

[3] Applying the same parameters that the government has applied in calculating gain for other defendants in this case, i.e. trades that were (i) in the window and (ii) round trips of three days or less, the sum of the unlawful gains in Garkusha's brokerage account and the Dubovoys' brokerage accounts was approximately $1,534,182.  See GX 8002.

Hon. Raymond J. Dearie
June 7, 2019
Page 4

spoke voluntarily about his own involvement in the criminal conduct described above, as well as that of his co-conspirators.[4]  In each of his meetings with the government, Garkusha was forthcoming and truthful.  Garkusha pled guilty, pursuant to a cooperation agreement, in December 2015, four months after his arrest.

Between his guilty plea in December 2015 and the June 2018 trial of Korchevsky and Khalupsky, Garkusha met with the government on multiple occasions, as requested, and to prepare for trial.  During these meetings, Garkusha was again forthcoming and truthful about his own involvement in the scheme and that of his co-conspirators, and expressed genuine remorse for his criminal conduct.

At trial, Garkusha testified about, among other things, how he first learned of the stolen press releases; the website he accessed in 2010 that included a compilation of press releases; his 2010 meeting with Dubovoy and Korchevsky at the Atlanta airport, during which Dubovoy and Korchevsky discussed the scheme; his decision to trade on the stolen information in 2015; and the text messages he received from Igor Dubovoy that provided coded instructions about how to trade on the stolen information.  Garkusha's testimony provided the jury with important evidence about how the scheme began and, significantly, when Korchevsky learned of it.  In addition, Garkusha helped explain and provided context for the documentary evidence related to the hacked press releases at the beginning of the scheme and coded text messages at the end of the scheme.  In sum, Garkusha's truthful testimony provided the jury with important and corroborated evidence from an insider who had first-hand knowledge of how the scheme began and was directly involved when it ended.  That testimony, as well as Garkusha's meetings with the government beginning shortly after his 2015 arrest, provided substantial assistance to the government in this case.

---

[4] Garkusha also disclosed to the government his role in prior criminal conduct involving the submission of false invoices in connection with work performed on an apartment complex in Tampa, Florida between approximately 2008 and 2010 and inflated charges for work performed on a marina restoration project between approximately 2009 and 2010.

Hon. Raymond J. Dearie
June 7, 2019
Page 5

IV.    <u>Conclusion</u>

As described above, Garkusha provided substantial assistance in the investigation and prosecutions of Korchevsky and Khalupsky, among others. Accordingly, the government recommends, pursuant to Section 5K1.1 of the Guidelines, that the Court, in its discretion, depart from the applicable advisory Guidelines range in sentencing Garkusha.

    Respectfully submitted,

    RICHARD P. DONOGHUE
    United States Attorney

By:    /s/
    Richard M. Tucker
    Julia Nestor
    David Gopstein
    Assistant U.S. Attorneys
    (718) 254-6204/6297/6153

Cc:    Clerk of the Court (RJD) (By ECF and Email)
    Jerome J. Froelich, Jr. Esq. (By Email)